**LAW OFFICE OF HAYES & WELSH**
Martin L. Welsh, Esquire
Nevada Attorney I.D. #8720
199 North Arroyo Grand Boulevard
Suite 200
Henderson, NV  89074
mwelsh@lvlaw.com
(702) 509-7310
Fax (702) 434-3739

Counsel for Plaintiffs and the Putative Class

[Additional Counsel Listed on Signature Page]

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| EBONI D. LUCAS, JEREMY GOARD, and SHAWNDREA STAFFORD, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>MGM RESORTS INTERNATIONAL, THE INTERNAL COMPENSATION COMMITTEE OF MGM RESORTS INTERNATIONAL, THE ADMINSTRATIVE COMMITTEE OF MGM RESORTS INTERNATIONAL, and JOHN DOES 1-30.<br><br>Defendants. | CIVIL ACTION NO.: 2:20-cv-01750-JAD-NJK<br><br>**PLAINTIFFS' CORRECTED UNOPPOSED AMENDED MOTION FOR CLASS CERTIFICATION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION** |

Plaintiffs Eboni D. Lucas, Jeremy Goard, and Shawndrea Stafford ("Plaintiffs"),[1] individually and on behalf of the MGM Resorts 401(k) Savings Plan (the "Plan"), by and through their undersigned counsel, respectfully submit this Amended Motion for Class Certification and hereby move this Court, pursuant to FED. R. CIV. P. 23, for an Order certifying this action ("Action") as a class action, appointing Plaintiffs as representatives of the proposed class defined below ("Class"), and appointing their counsel, Capozzi Adler, P.C., ("Capozzi Adler") as Class Counsel.  Plaintiffs' ERISA claims satisfy the requirements of Federal Rule of Civil Procedure 23(a) and (b): (1) there are more than twenty-thousand participants in the Plan; (2) Plaintiffs are typical of the participants;  (3) common issues abound regarding the manner in which Defendants managed the Plan's assets;  and (4) Plaintiffs have retained experienced class counsel and are adequate to represent the interests of the class.[2]  For the reasons explained in the memorandum of points and authorities below, and other supporting papers, Plaintiffs respectfully submit that the Court should certify the following proposed Class:

> All persons, except Defendants and their immediate family members, who were participants in or beneficiaries of the Plan, at any time between September 23, 2014 through the date of judgment (the "Class Period"), excluding any class member who executed an applicable release.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    INTRODUCTION**

---

[1] On August 18, 2022, the Court granted Plaintiffs' unopposed motion to drop Christopher Manlongat as a Named Plaintiff.  ECF 92.

[2] Plaintiffs seek class certification because it will likely afford Plan participants the best possible representation and the best protection of their interests (including via the Court's Rule 23(d) supervisory authority).  *See, e.g.*, *Coan v. Kaufman*, 457 F.3d 250, 261 (2d Cir. 2006) (finding plaintiff's failure to proceed under Rule 23 meant the case was "without the benefit of a procedural mechanism for the protection of the interested parties").  However, Plaintiffs do not concede that class certification is required for them to prosecute claims on behalf of the Plan and all participants. *See, e.g.*, *In re: Wilmington Trust Corp.,* 2013 WL 4757843, at *3 (D. Del. Sept. 4, 2013) (granting plaintiffs' motion to proceed derivatively on behalf of all plan participants without class certification, because of the nature of such claims).

- 2 -
PLAINTIFFS' CORRECTED AMENDED UNOPPOSED MOTION FOR CLASS CERTIFICATION AND
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION

Plaintiffs allege claims under ERISA[3] § 502(a)(2) for breaches of fiduciary duty of the type routinely certified in this Circuit and courts throughout the country. *See, e.g., Urakhchin v. Allianz Asset Mgmt of Am., L.P.*, 2017 WL 2655678, at *2 (C.D. Cal. June 15, 2017) (certifying class in analogous ERISA breach of fiduciary duty action); *Tibble v. Edison Int'l*, 2009 WL 6764541, at *6 (C.D. Cal. June 30, 2009) (same); *In re Northrop Grumman Corp. ERISA Litig.*, 2011 WL 3505264, at *14-15 (C.D. Cal. March 29, 2011) (same).[4] Indeed, "Courts have noted that "ERISA [fiduciary litigation]… presents a paradigmatic example of a (b)(1) class." *Tibble, et al. v. Edison Int'l, et al.*, 2009 WL 6764541, at *7 (C.D. Cal. 2009) (citation omitted); *see also In*

---

[3] The Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, *et seq*.

[4] Many other recent decisions have certified classes in ERISA actions alleging breach of fiduciary duty due to inclusion of imprudent investment options in retirement plans. *See, e.g. Karg v. Transamerica Corp.*, 2020 WL 3400199 (N.D. Iowa Mar. 25, 2020) (certifying class alleging defendants breached fiduciary duties by selecting poorly performing investment options); *Vellali v. Yale Univ.*, 33 F.R.D. 10 (D. Conn. 2019) (certifying class in case alleging fiduciaries saddled retirement plan with investment options that charged excessive management fees); *Cunningham et al. v. Cornell Univ.*, 2019 WL 275827 (S.D.N.Y. Jan. 22, 2019) (same); *Beach v. JPMorgan Chase Bank, N.A.*, 2019 WL 2428631 (S.D.N.Y. June 11, 2019) (same); *Cassell v. Vanderbilt Univ.*, 2018 WL 5264640 (M.D. Tenn. Oct. 23, 2018) (same); *Leber, et al., v. Citigroup 401(k) Plan Inv. Comm.*, 323 F.R.D. 145 (S.D.N.Y. 2017) (same); *Moreno, et al., v. Deutsche Bank Ams. Holding Corp.,* 2017 WL 3868803 (S.D.N.Y. Sept. 5, 2017) (same); *Henderson, et al., v. Emory Univ., et al.*, 2018 WL 6332343 (N.D. Ga. Sept. 13, 2018) (certifying class under 23(b)(1)(A) and (B)); *Clark v. Duke Univ.*, 2018 WL 1801946 (M.D.N.C. April 13, 2018) (same); *Sacerdote v. New York Univ.,* 2018 WL 840364 (S.D.N.Y. Feb. 13, 2018) (certifying class and subclasses pursuant to Rule 23(b)(1)(A)); *Wildman v. Am. Century Servs., LLC,* 2017 WL 6045487 (W.D. Mo. Dec. 6, 2017) (certifying class and subclasses pursuant to Rule 23(b)(1)); *Marshall, et al., v. Northrop Grumman Corp.*, 2017 WL 6888281 (C.D. Cal. Nov. 2, 2017) (certifying class and subclasses pursuant to Rules 23(a) and 23(b)(1)); *Sims v. BB&T Corp.*, 2017 WL 3730552 (M.D.N.C. Aug. 28, 2017) (same); *Cryer v. Franklin Templeton Res., Inc.*, 2017 WL 4023149 (N.D. Cal. July 26, 2017) (certifying class and subclasses pursuant to Rule 23(b)(1)); *Rozo v. Principal Life Ins. Co.*, 2017 WL 2292834 (S.D. Iowa May 12, 2017) (certifying class and subclasses pursuant to Rules 23(a) and Rule 23(b)(1)(A)); *In re: Merck & Co., Inc., Securities, Derivative & ERISA Litig.*, MDL No. 1658, 2009 WL 331426, at *10-12 (D.N.J. Feb. 10, 2009); *Stanford* v. *Foamex, L.P.*, 263 F.R.D. 156, 175 (E.D. Pa. 2009); *In re: Schering-Plough Corp. Enhance ERISA Litig.*, 2012 WL 1964451 (D.N.J. Dec. 16, 2010); *Moore v. Comcast Corp.*, 268 F.R.D. 530, 538 (E.D. Pa. 2010); *Cunningham, et al. v. WAWA, Inc., et al*, 387 F.Supp.3d 529 (E.D. Pa. 2019); *Yost v. First Horizon Nat'l Corp.*, 2011 WL 2182262, at *64, n. 82 (W.D. Tenn. June 3, 2011) (listing cases); *Cassell v. Vanderbilt Univ., et al.*, No. 3:16-cv-02086 (ECF No. 127) (M.D. Tenn. Oct. 23, 2018) (granting plaintiffs' motion for class certification); *Disselkamp v. Norton Healthcare, Inc., et al.*, No. 3:18-cv-00048-GNS-CHL (ECF No. 120) (W.D. Ky. March 1, 2021) (same); *Shanehchian v. Macys, Inc., et al.*, 2011 WL 883659 (S.D. Ohio March 10, 2011) (same); *Shirk v. Fifth Third Bancorp*, 2008 WL 4425535 (S.D. Ohio Sept. 30, 2008) (same); *In re Nortel Networks Corp. ERISA Litig.*, 2009 WL 3294827 (M.D. Tenn. Sept. 2, 2009) (same); *Rankin v. Rots*, 220 F.R.D. 511 (E.D. Mich. 2004) (same).

*re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 604 (3d Cir. 2009) (finding "[i]n light of the derivative nature of ERISA § 502(a)(2) claims, breach of fiduciary duty claims brought under § 502(a)(2) are paradigmatic examples of claims appropriate for certification as a Rule 23(b)(1) class.").

Notably, in addition to the decisions cited above, over the years dozens of ERISA actions alleging similar breaches of fiduciary duty have been certified in this Circuit and throughout the country.[5] The same is warranted here.

## II.   CONCISE STATEMENT OF THE ISSUES PRESENTED

### A. Nature of the Plan

1. MGM is the Plan sponsor and a named fiduciary of the Plan. Gyandoh Decl., ¶ 33 (citing The MGM Resorts 401(k) Savings Plan Summary Plan Description dated 6/2014 (SPD) at 29 (MGM002351)). As a "defined contribution" retirement plan, the Plan "provides eligible employees with the ability to accumulate long-term retirement savings through contributions to individual participant accounts." Gyandoh Decl., ¶ 34 (citing MGM Resorts 401(k) Savings Plan Investment Policy Statement at 1 (MGM001202)). Although Plan participants and beneficiaries decide how their Plan accounts are invested and "can choose to invest in any of the various options offered through the Plan, subject to certain restrictions," Gyandoh Decl., ¶ 35 (citing SPD at 11 (MGM002333)), it is the Plan's fiduciaries' responsibility to prudently select and monitor the investment options provided on the menu of investment options.

### B. Defendants Were Fiduciaries of the Plan

MGM, as the Plan sponsor has appointed the Administrative Committee as the Plan Administrator. Gyandoh Decl., ¶ 36 (citing SPD at 29 (MGM002351)). In particular, prior to

---

[5] *See* Exhibit 3 to the accompanying Declaration of Mark K. Gyandoh (the "Gyandoh Decl.") (a non-exhaustive list of decisions certifying classes in ERISA breach of fiduciary duty actions like the instant action brought pursuant to ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), including at least 25 decisions certifying classes in "excessive fee" suits). All Exhibits referenced herein are attached to the Gyandoh Declaration.

December 1, 2014, the Compensation Committee of the MGM Board held administrative duties over the Plan. *Id.* As of December 1, 2014, the Compensation Committee of the MGM Board delegated to the Company's Internal Compensation Committee its administrative duties over the Plan. Such duties included the authority to appoint and reappoint the members of the Administrative Committee. *Id.*

The primary responsibilities of the Administrative Committee include to "[a]pprove and maintain [the] IPS"; "[p]rovide sufficient asset classes with different and distinct risk/return profiles"; "[s]elect and monitor the investment options under the Plan"; "[s]elect and monitor the QDIA"; "[r]eview investment related expenses associated with the Plan"; "[m]onitor and, if necessary, hire or terminate the Investment Consultant, any investment managers and service vendors"; and "[f]rom time to time, retain lawyers, consultants, actuaries and other experts (sic) to advise it with respect to the discharge of the foregoing obligations." Gyandoh Decl., ¶ 37 (citing IPS at 3 (MGM001204)). The Administrative Committee members are "fiduciaries" of the Plan and have a duty to operate the Plan "prudently and in the interest of you and other Plan Participants and beneficiaries." Gyandoh Decl., ¶ 38 (citing SPD at 27 (MGM002349)). The prudent selection and monitoring of the investment options by the Committee is crucial to fulfill the purpose of the Plan, which is, among other things, to enable "eligible employees to accumulate and invest savings on a tax-advantaged basis in order to provide additional income and security upon retirement." *See* SPD at 1 (MGM002323).

Although not a Defendant in this action, the Plan's recordkeeper has a role in this litigation. During the Class Period, Prudential Investment Management Services, LLC ("Prudential"), and later Empower, provided and continues to provide recordkeeping and administrative services to the Plan.[6]  Gyandoh Decl., ¶ 40 (citing March 2015 Notice (EMP0000198); Prudential Estimated Revenue Available for Recordkeeping Expenses as of

---

[6] On April 4, 2022, Prudential announced "the completion of the sale of its full-service retirement business to Empower." *See https://news.prudential.com/prudential-financial-completes-sale-to-empower-full-service-retirement-business.htm*

12/31/2018 (EMP0062515-EMP0062517); Prudential Estimated Revenue Available for Recordkeeping Expenses as of 09/30/2019 (EMP0062527-EMP0062529); Prudential Estimated Revenue Available for Recordkeeping Expenses as of 03/31/2020 (EMP0062521-EMP0062523); Prudential Estimated Revenue Available for Recordkeeping Expenses as of 03/31/2021 (EMP0062533-EMP0062535)).The Plan's recordkeeper is responsible for, among other things, maintaining participant records, administrating participant directions, reporting to the Plan sponsor, reporting to participants, allocating contributions, administering loans, and preparing the required regulatory documents.  Gyandoh Decl., ¶ 41.

### C. Named Plaintiffs

Defendants admit each of the Named Plaintiffs was a participant in the Plan during the Class Period and was invested in some investment options in the Plan.   Defendants Answer and Affirmative Defenses to Plaintiffs' Amended Complaint (ECF No. 72) ("Defs. Answer") at ¶¶ 17-20.  Plaintiff Eboni D. Lucas was a participant in the Plan during the Class Period and was invested in the options offered by the Plan, and which are the subject of this lawsuit, including the JPMorgan Equity Income R5, Lazard International Equity Open, MFS Mass Investors Growth R3, and the T. Rowe Price Growth Stock Stgy funds, and was subject to the Plan's unreasonably excessive recordkeeping fees.  *See* Gyandoh Decl. ¶ 59; Exhibit 4, ¶ 5 (Declaration of Eboni D. Lucas) ("Lucas Decl."). Plaintiff Jeremy Goard was a participant in the Plan during the Class Period and was invested in the options offered by the Plan and was subject to the Plan's unreasonably excessive recordkeeping fees.  *See* Gyandoh Decl. ¶ 60; Exhibit 5, ¶ 5 (Declaration of Jeremy Goard) ("Goard Decl.").   Plaintiff Shawndrea Stafford was a participant in the Plan during the Class Period and was invested in the options offered by the Plan and which are the subject of this lawsuit, including the T. Rowe Price Growth Stock, and was subject to the Plan's unreasonably excessive recordkeeping fees.  *See* Gyandoh Decl. ¶ 61; Exhibit 6, ¶ 5 (Declaration of Shawndrea Stafford) ("Stafford Decl.").

### III.  STANDARD FOR CLASS CERTIFICATION

"A party seeking class certification must satisfy the requirements of Federal Rule of Civil Procedure 23(a) and the requirements of at least one of the categories under Rule 23(b)." *Wang v. Chinese Daily News, Inc.*, 737 F.3d 538, 542 (9th Cir. 2013). Specifically, Plaintiffs must show that the class satisfies the four prerequisites of Rule 23(a) (commonly referred to as numerosity, commonality, typicality, and adequacy). *Id.* "A party seeking class certification must affirmatively demonstrate his compliance with the Rule – that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or facts, etc." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).

Although courts must conduct a "rigorous" analysis of the Rule 23 elements, this is not a "license to engage in free-ranging merits inquiries at the certification stage." *Amgen, Inc. v. Conn. Ret. Plans & Tr. Funds*, 133 S.Ct. 1184, 1194–95 (2013). "Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Id.* at 1195.

### IV.    PLAINTIFFS ASSERT VIABLE CLAIMS

Plaintiffs' alleged facts are set forth in the Amended Complaint and the Gyandoh Declaration. *See* ECF No. 14; Gyandoh Decl. ¶¶ 11-18. In short, the Plan plays a central role in the retirement planning for Plaintiffs and the other Class members, and thus the performance of their Plan investments will directly impact their financial security during retirement. Accordingly, the prudent selection and monitoring of the investment options by the Committee is crucial to fulfill the purpose of the Plan, which is, among other things, to enable eligible Employees to save for retirement. Gyandoh Decl. ¶ 43.

In the Amended Complaint, Plaintiffs assert the following claims: (1) Count I against the Committee Defendants for their failure to prudently manage the Plan's assets because during the Class Period, "[t]hey did not make decisions regarding the Plan's investment lineup based solely on the merits of each investment and what was in the best interest of Plan participants" and "[i]nstead, the Prudence Defendants selected and retained investment options in the Plan despite the high cost of the funds in relation to other comparable investments." Am. Cmplt. ¶ 143; and (2) Count II

against the Monitoring Defendants for breach of their fiduciary duties to monitor the Prudence Defendants because, during the Class Period, they "fail[ed] to monitor and evaluate the performance of the Administrative Committee or have a system in place for doing so, standing idly by as the Plan suffered significant losses in the form of unreasonably high expenses, imprudent choices of funds' class of shares, and inefficient fund management styles that adversely affected the investment performance of the Funds' and their participants' assets "; "fail[ed] to monitor the processes by which Plan investments were evaluated, failing to correct the Administrative Committee Defendants' failure and continued failure to investigate the availability of lower-cost share classes"; and "fail[ed] to remove the Administrative Committee members whose performance was inadequate in that they continued to maintain imprudent, excessively costly, and poorly performing investments within the Plan." Am. Cmplt. ¶ 151.

Fact discovery has recently concluded. The Parties are continuing to engage in expert discovery.

## V. ARGUMENT

### A. Plaintiffs Have Standing To Pursue Claims on Behalf of the Plan

A suit under 29 U.S.C. §1132(a)(2) is "brought in a representative capacity on behalf of the plan as a whole," and remedies under §1109 "protect the entire plan." *Braden v. Wal-Mart Stores, Inc*, 588 F.3d 585, 593 (8th Cir. 2009). Thus, plaintiffs in an ERISA case like this one may seek recovery on behalf of the ***entire plan***, even if they did not personally invest in every one of the funds that caused injury. The court in *Clark v. Duke University*, 2018 WL 1801946 (M.D.N.C. April 13, 2018), an analogous ERISA action, explained it this way:

> The cases cited by the defendants do not require a different conclusion. Those cases involve allegations that the ERISA fiduciaries breached their duties in buying or keeping specific funds in which the named plaintiff did not invest.
>
> ****
>
> That is not the case here, where the plaintiffs are invested in some of the challenged funds and where they allege that the breach of fiduciary duty arose from the overall decision-making processes, or lack thereof.

> 'At bottom, the gist of the question of standing is whether [plaintiffs] have such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination.'

*Id.* at * 4-5 (quoting *Massachusetts v EPA*, 549 U.S. 497, 517 (2007)); *see also Cassell*, 2018 WL 5264640 at * 3 (while certifying class, observing that like Plaintiffs here, "[p]laintiffs allege that Defendants failed independently to evaluate investment options and adequately to monitor those investments, resulting in injuries to the Plan…. [The plaintiffs] were invested in only some of those allegedly imprudent funds. To the extent this allegedly imprudent practice of Defendants resulted in investment in allegedly imprudent funds, participants in those funds were injured."). Nearly all courts that have examined the issue are in accord.[7]

Most recently, the Third Circuit rejected an appeal of the district court's certification of a class based on the argument plaintiffs lacked standing and typicality because they "did not invest in each of a defined contribution retirement plan's available investment options." *Boley v. Universal Health Services, Inc.*, --- F.4th ---, 2022 WL 1768984, at * 1 (3d Cir. June 1, 2022). The court found each plaintiff to have standing because "each invested in at least one of the [challenged funds]," and alleged all the funds "were imprudent for the same reasons." *id.* at * 4. The court also found plaintiffs to satisfy typicality. It stated:

---

[7] *See, e.g., Hay v. Gucci America, Inc., et al.*, 2018 WL 4815558, at * 4 (D.N.J. Oct. 3, 2018) ("Although in certain types of matters, courts have found that a plaintiff cannot suffer an injury from an investment that he or she did not purchase, 'courts have declined to apply the above bright-line rule when addressing ERISA claims for breach of fiduciary duties.'") (citation omitted); *Beach v. JPMorgan Chase Bank, Nat'l Assn.,* 2019 WL 2428631, at *5 (S.D.N.Y. June 11, 2019) (finding plaintiffs had standing to assert claims related to funds in which they did not invest); *Larson v. Allina Health Sys.*, 350 F.Supp. 3d 780, 792 (D. Minn. 2018) (same); *Johnson v. Providence Health & Services, et al.*, 2018 WL 1427421, at * 4 (W.D. Wash. Mar. 22, 2018) (same); *Johnson et al. v. Fujitsu Tech. and Bus. of Am., Inc.*, 250 F.Supp. 3d 460, 465 (N.D. Cal. Apr. 11, 2017) (same); *Leber v. Citigroup 401(k) Plan Investment Committee*, 2017 WL 5664850, at * 6 (S.D.N.Y. Nov. 27, 2017) (same); *Glass Dimensions, Inc. v. State Street Bank & Trust Co.*, 285 F.R.D. 169, 175 (D. Mass. 2012) (same); *Tussey v. ABB, Inc.*, No. 06-cv-4305, 2007 WL 4289694, *2 (W.D. Mo. Dec. 3, 2007) (same); *McDonald v. Jones*, 2017 WL 372101, at * 3 (E.D. Mo. Jan. 26, 2017) (same); *Urakhchin v. Allianz Asset Mgmt. of Am., L.P.*, 2016 WL 4507117, at *4-5 (C.D. Cal. Aug. 5, 2016) (same).

> The Named Plaintiffs have alleged that Universal employed a flawed fund selection process resulting in a menu of excessively expensive funds. They have also alleged Universal failed to monitor expense ratios and consider possible ways to lessen fees charged to participants. These claims are the same for participants across all the Plan's thirty-seven funds. Each participant's potential recovery, regardless of the fund in which he or she invested, is under the same legal theory—Universal's breach of its fiduciary duty under ERISA in managing the Plan's investment options. Likewise, each participant who was charged excessive fees when investing in any of the Plan's funds can trace his or her injury to the same practice—Universal's alleged failure to properly consider expense ratios when selecting and updating the Plan's investment options.

*Id.* at * 6. Here, each of the Plaintiffs is a former participant in the Plan and participated in at least one of the challenged funds and/or was subjected to the Plan's excessive recordkeeping fees. *See* Lucas Decl., ¶ 5; Goard Decl., ¶ 5; Stafford Decl., ¶ 5. Plaintiffs also allege "[a]s a direct and proximate result of the breaches of fiduciary duties alleged herein, the Plan suffered millions of dollars of losses due to excessive costs and lower net investment returns" and "[h]ad the Prudence Defendants complied with their fiduciary obligations, the Plan would not have suffered these losses, and Plan participants would have had more money available to them for their retirement." Am. Cmplt. at ¶ 144. Accordingly, Plaintiffs have standing to pursue the Plan and class members' claims.

### B. The Proposed Class Satisfies the Requirements of Federal Rule of Civil Procedure 23(a)

Plaintiffs seek to certify a class that excludes Plan participants who executed severance agreements releasing any claims against Defendants related to the administration of the Plan during the proposed Class Period. *See, e.g. Beach,* 2019 WL 242863, at * 7 (narrowing class to exclude certain class members).[8] A class must first satisfy the four basic prerequisites of Rule

---

[8] To the extent Plaintiffs Shawndrea Stafford and Jeremy Goard have signed an applicable release prohibiting them from filing an action against Defendants in their individual capacity, they voluntarily dismiss any such individual claims. Under relevant Ninth Circuit authority, however, they may serve as representatives of the Plan and proposed class. *See Bowles v. Reade,* 198 F.3d 752, 759-61 (9tn Cir. 1999) (finding "the district court properly allowed Bowles to remain 'as a plaintiff in her representative capacity on behalf of the Plans and the participants notwithstanding their release of her individual claims against Ms. Reade.'"); *In re JDS Uniphase Corp. ERISA Litig.,* 2006 WL 2597995, at * 1 (N.D. Cal. 2006) (finding releases "do not bar ERISA fiduciary duty claims brought by plan beneficiaries on behalf of the plan.")

23(a): (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation. FED. R. CIV. P. 23(a); *Wang*, 737 F.3d at 542. Plaintiffs have satisfied all four elements of Rule 23(a).

### 1. The Proposed Class Satisfies the "Numerosity" Requirement of 23(a)(1)

Rule 23(a)(1) calls for certification if "the class is so numerous that joinder of all members is impracticable." FED. R. CIV. P. 23(a)(1). This factor is easily satisfied as during the Class Period, the number of participants in the Plan ranged from over 25,000 to over 31,000.[9] *Delarosa v. Boiron, Inc.*, 275 F.R.D. 582, 587 (C.D. Cal. 2011) ("classes of forty or more are considered sufficiently numerous").

### 2. The Class Satisfies the "Commonality" Requirement of Rule 23(a)(2)

Commonality concerns "the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Wal-Mart Stores, Inc. v. Dukes,* 564 U.S. 338, 350 (2011); *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 397 (6th Cir. 1998) (resolution of issue must "advance the litigation."). "Even a single common question will do." *Dukes*, 564 U.S. at 359 (cleaned up). "Rule 23(a)(2) is met so long as there is 'a single significant question of law or fact' common to the class." *Urakhchin*, 2017 WL 2655678, at *4 (citing *Abdullah v. U.S. Sec. Assocs., Inc.*, 731 F.3d 952, 957 (9th Cir. 2013)). In ERISA breach of fiduciary duty actions, "the common focus is on the conduct of Defendants…Plaintiffs' claims do not focus on injuries caused to each individual account, but rather on how the Defendants' conduct affected the pool of assets that make up the [Plan]." *Kanawi v. Bechtel Corp.*, 254 F.R.D. 102, 109 (N.D. Cal. 2008).

"The commonality requirement is particularly easy to meet when the defendant has engaged in a course of conduct which gives rise to a single cause of action." *Nortel*, 2009 WL

---

[9] *See* Gyandoh Decl. ¶¶ 44-45 (citing 2014 through 2020 Form 5500s).

3294827, *5. Typically, "the question of defendants' liability for ERISA violations is common to all class members because a breach of a fiduciary duty affects all participants and beneficiaries." *Shirk*, 2008 WL 4425535, *2 (quoting *Banyai v. Mazur,* 205 F.R.D. 160, 163 (S.D.N.Y. 2002)). "What matters to class certification…is not the raising of common questions – even in droves – but, rather the capacity of a classwide proceeding to generate common *answer* apt to drive the resolution of the litigation." *Dukes*, 564 U.S. at 349-50.

Here, the overarching questions of law and fact applicable to all Plan participants are whether Defendants breached fiduciary duties owed to the Plan and its participants by: selecting and retaining investment options in the Plan despite the high cost of the funds in relation to other comparable investments; failing to investigate the availability of lower-cost share classes of certain mutual funds in the Plan; and failing to monitor or control the compensation paid for recordkeeping and administration services. *See* Gyandoh Decl., ¶¶ 12-18. Moreover, as noted *supra* in Section II, all Plan participants were subject to the Committee's decisions about selection of Plan investments. *See Wal-Mart*, 564 U.S. at 355. All of these questions are sufficient to satisfy plaintiffs' burden under Rule 23(a)(2) because they all "are focused solely on Defendants and their actions, and will require the same proof for all class members." *Nortel*, 2009 UWL 3294827, *8.

### 3. Plaintiffs' Claims Satisfy the "Typicality" Requirement of 23(a)(3)

Under FED. R. CIV. P. 23 (a)(3), Plaintiffs also must show that the "claims or defenses of the representative parties are typical of the claims or defenses of the class." FED. R. CIV. P. 23 (a)(3). "The typicality requirement looks to whether the claims of the class representatives [are] typical of those of the class, and [is] satisfied when each class member's claim arise from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th Cir. 2010). Generally, "[t]he test of typicality is whether other members have the same or similar injury, whether the action is based on conduct [that] is not unique to the named plaintiffs, and whether other class

members have been injured by the same course of conduct." *Northrop Grumman*, 2011 WL 3505264, at *9 (*Hanon*, 976 F.2d at 508).

"Courts within the Ninth Circuit have repeatedly concluded that the typicality requirement was satisfied in defined contribution cases despite the fact that 'participants have individual accounts and select their investment fund from a variety of available options.'" *In re Northrop Grumman Corp., ERISA Litig.*, 2011 WL 3505264, at *10 (C.D. Cal. Mar. 29, 2011) (citing cases). "Nor does the fact that some Plan participants may have profited from their investments defeat typicality." *Urakhchin*, 2017 WL 2655678, at *5 (citing *In re Computer Scis. Corp. ERISA Litig.*, 2008 WL 7527872, at *2 (C.D. Cal. Dec. 29, 2008)); *see also Lozano v. AT&T Wireless Servs., Inc.*, 504 F.3d 718, 734 (9th Cir. 2007) (Ninth Circuit concluded "it is not necessary that all class members suffer the same injury as the class representative."). Further, "a representative's claim need not always involve the same facts or law, provided there is a common element of fact or law." *Beattie*, 511 F.3d at 561 (quoting *Senter v. Gen. Motors Corp.*, 532 F.2d 511, 525 n.31 (6th Cir. 1976)).

Here, Plaintiffs easily satisfy the typicality prong of Rule 23 because "[a]s common investors in the Challenged Funds, plaintiffs and proposed class members allege similar harm resulting from defendants' alleged fiduciary breaches. In fact, the harm may be identical." [10] *Karg*, 2020 WL 3400199, at * 3;  *see also Stanford*, 263 F.R.D. at 167 (finding typicality requirement satisfied "because plaintiff challenges the same conduct that affects both the plaintiff and the absent class members");  *Sims v. BB&T Corp.*, 2017 WL 3730552, at*4 (M.D.N.C. Aug. 28, 2017) (finding typicality where "each named plaintiff's claim and each class member's claim is based on the same events and legal theory—a breach of fiduciary duty stemming from the defendants' alleged disloyal and imprudent process for selecting,

---

[10] Plaintiff Goard did not invest in the challenged funds but as argued *supra* n. 8 he may nonetheless represent the proposed class. *See Reade,* 198 F.3d 759-61. Additionally, each of the Plaintiffs, including Mr. Goard, allege being subjected to excessive recordkeeping fees. ¶¶ 113-139.

administering, and monitoring the [p]lan's investments" and where "the remedial theory . . . is identical for the named plaintiffs and the class members.") (citations omitted).

### 4. Plaintiffs Will Adequately Protect the Interest of the Class, Satisfying Rule 23(a)(4)

Under Rule 23(a)(4), the representative parties must fairly and adequately protect the interests of the class. FED. R. CIV. P. 23(a)(4).

#### i. Plaintiffs Are Adequate Class Representatives

"The threshold of knowledge required to qualify a class representative is low; a party must be familiar with the basic elements of her claim." *Cryer*, 2017 WL 4023149k, at *6 (quoting *Moeller v. Taco Bell Corp.*, 220 F.R.D. 604, 611 (N.D. Cal. 2004)). A representative need not have detailed knowledge of the facts, particularly in complex cases "in which the defendant's liability can be established only after a great deal of investigation and discovery by counsel against a background of legal knowledge[.]" *Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 430 (4th Cir. 2003); *Baffa v. Donaldson*, 222 F.3d 52, 61 (2d Cir. 2000)(noting Supreme Court has "expressly disapproved" attacking "the adequacy of a class representative based on the representative's ignorance."). In fact, "[c]ourts are reluctant […] to deny class certification on the basis that the class representatives lack sophistication." *Northrop Grumman*, 2011 WL 3505264, at *14. The more important factor is whether the plaintiff is willing and able to devote time to the case by participating in discovery. *Id.* at *15 (plaintiffs adequate where they understood their role and were willing to travel to testify at trial if necessary).

Further, the interests of all Plan participants are aligned because the named Plaintiffs "have identical legal and effectively identical financial interests in this action as do the proposed class members" *Sacerdote*, 2018 WL 840364, *4. Plaintiffs have no interests antagonistic with each other, the Class, or any segment of the Class. To the contrary, Plaintiffs' interests are identical to those of the Class. Named Plaintiffs seek to establish Defendants breached their fiduciary duties by continuing to offer inferior investment alternatives and pay excessive recordkeeping fees which caused the Plan and its participants an

economic loss.  As such, each member of the proposed Class, just like the Named Plaintiffs, has a similar interest in recovering losses suffered by the Plan as a result of the conduct of the Defendants. In other words, Plaintiffs, like all Class members, were participants during the Class Period, and they seek Plan-wide relief for Defendants' identical breaches of fiduciary duty that equally affected similarly situated participants, as discussed above.  *See, e.g.*, *Stanford*, 263 F.R.D. at 171("Because Stanford is challenging the same course of conduct and seeking the same relief as the rest of the absent class members, the court finds that Stanford's interests are sufficiently aligned with the those of the class."); *Jones v. NovaStar Fin., Inc.*, 257 F.R.D. 181, 192 (W.D. Mo. 2009) ("There is no indication that [plaintiff's] interests are antagonistic to those of the class (citation omitted). . . .Again, in an action seeking to recover on behalf of a plan, the focus is on the impact of the defendants' actions on that plan.  Indeed [plaintiff] has an incentive to maximize recovery to the Plan because she will be affected.").

Plaintiffs must prove the same wrongdoing by Defendants as any and every absent Class member would need to show to establish Defendants' liability.  Moreover, each Plaintiff has confirmed that he is ready, willing, and able to fulfill the duties required of a class representative.  Each Plaintiff has submitted a declaration attesting to his or her efforts to date and confirming their desire to serve as a representative of the Class.  Up to this point in this litigation, they have: reviewed the allegations in the Complaint and Amended Complaint and provided information to counsel prior to the initiation of this action; provided documents and assisted counsel in discovery matters; and maintained regular communication with counsel in order to stay informed about the case.  *See* Lucas Decl., ¶¶ 9-10; Goard Decl., ¶¶ 9-10; Stafford Decl., ¶¶ 9-10.  As noted in their declarations, Plaintiffs understand their responsibilities and duties as class representatives, including preparing and presenting for a deposition and testifying at trial if necessary, and will take all steps necessary to protect the interests of the proposed Class.  *See* Lucas Decl., ¶¶ 11-12; Goard Decl., ¶¶ 11-12; Stafford Decl., ¶¶ 11-12.  Courts have relied upon similar declarations as evidence of the named plaintiffs' adequacy.  *See, e.g.*, *Karg*, 2020 WL 3400199, at * 3 (noting plaintiffs "have submitted signed declarations

to the Court attesting to their active participation here, their willingness to undertake additional responsibility, and their understanding of their role as class representatives to fairly and adequately protect the class members' interests."); *Henderson,* 2018 WL 6332343, at *7 (finding adequacy prong met where, among other things, plaintiffs "submitted affidavits attesting to their participation in [the] action and vowing to vigorously pursue the case."); *Fuller, et al. v. SunTrust Banks, Inc., et al.*, 2018 U.S. Dist. LEXIS 113108, at *17 (N.D. Ga. June 27, 2018) ("Although the affidavits are pro forma documents prepared by counsel, each Plaintiff signed at the bottom acknowledging that the affidavit contained their true contentions"); *Moreno,* 2017 WL 3868803, at * 7 ("Each Plaintiff has filed a declaration attesting that they have reviewed the allegations of the [c]omplaint, are aware that the suit concerns allegations that [d]efendants' investment offerings were improper …."); *Sims*, 2017 WL 3730552, at *5 (finding adequacy prong met where "[t]he Plaintiffs have declared that they will fairly and adequately represent the interests of the class, Docs. 147-1 to 147-12").

"A class representative need only possess 'a minimal degree of knowledge necessary to meet the adequacy standard.'" *New Directions Treatment Serv. v. City of Reading*, 490 F.3d 293, 313 (3d Cir. 2007) (quoting *Szczubelek v. Cendant Mortgage Corp.*, 215 F.R.D. 107, 119 (D.N.J. 2003)); *see also Jacobs v. Verizon Communications, Inc.*, 2020 WL 5796165, at * 9 (S.D.N.Y. Sept. 29, 2020) (finding adequacy met where "Plaintiff is 'aware of fundamental aspects of the case,' and that she has 'demonstrat[ed] [an] interest in the litigation [that] is considerable.'")  Here, the evidence demonstrates Plaintiffs possess more than a "minimal degree of knowledge" necessary to satisfy the adequacy requirement.  As addressed *supra*, Plaintiffs' declarations acknowledge Plaintiffs' intents to represent the interests of the class until the conclusion of this case.  *See* Lucas Decl., ¶¶ 11-12; Goard Decl., ¶¶ 11-12; Manlongat Decl., ¶¶ 11-12; Stafford Decl., ¶¶ 11-12.

Plaintiffs need not possess an extensive financial background to meet the adequacy requirement.  In fact, the Ninth Circuit "has never imposed a knowledge requirement on proposed class representatives." *Urakhchin*, 2017 WL 2655678, at *6 (citing *Tibble*, 2009 WL

6764541, at *6). As such, and as noted above, "[c]ourts are reluctant…to deny class certification on the basis that the class representatives lack sophistication." *In re Northrop Grumman*, 2011 WL 3505264, at *14; *see also Buus v. WAMU Pension Plan*, 251 F.R.D. 578, 587 (W.D. Wash. 2008) ("Several decades ago, the Supreme Court remarked that Rule 23 should not be used to 'defeat the ends of justice' by facilitating the dismissal of class action complaints involving unsophisticated named plaintiffs.") (citing *Surowitz v. Hilton Hotels Corp.*, 383 U.S. 363, 373 (1966)).

Further, in directly analogous actions, courts find plaintiffs, similar to Plaintiffs here, to be adequate.[11] In sum, Plaintiffs satisfy Rule 23(a)(4)'s adequacy requirement.

### ii. Plaintiffs' Counsel Have No Conflicts With the Class, Are Qualified and Experienced, and Will Vigorously Prosecute This Action for the Class

The inquiry into the adequacy of class counsel is now decoupled from the Rule 23(a)(4) inquiry into the adequacy of the class representatives and is analyzed under factors set forth in Rule 23(g). *Karg*, 2020 WL 3400199, at *5 (citing FED. R. CIV. P. 23) ("If the motion includes a proposal for the appointment of class counsel, set forth with particularity the information the court must consider in assessing proposed class counsel's ability to represent the interests of the class fairly and adequately, as set forth in Federal Rules of Civil Procedure 23(g)(1)(A) and (B)."). Rule 23(g) complements the requirement of Rule 23(a) that class representatives adequately represent the interests of class members by focusing on the qualifications of class counsel. Rule 23(g)(1)(A) instructs the court to consider, among other things: (1) the work counsel has done in identifying or investigating potential claims in the action; (2) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (3) counsel's knowledge of the applicable law; and (4) the resources counsel will commit to representing the class. FED. R. CIV. P. 23(g)(1)(A). Rule 23(g) notes a court may

---

[11] *See, e.g.*, *Clark*, 2018 WL 1801946 at *9 (finding plaintiffs met the adequacy requirement); *Wildman*, 2017 WL 6045487, at *5 (same).

also consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." FED. R. CIV. P. 23(g)(1)(B).

Here, Capozzi Adler satisfies all prerequisites. *First*, Capozzi Adler has done significant work identifying and investigating potential claims in this action. It began its investigation of claims several months before filing suit. Gyandoh Decl., ¶¶ 7-10. This work included requesting documents from the Company pursuant to ERISA § 104(b)(4) and engaging consulting experts. *Id*. *Second,* Capozzi Adler and the undersigned counsel have significant experience handling ERISA matters and have knowledge of the applicable law. *Id*. at ¶¶ 46-55. Mark K. Gyandoh is the chair of the Fiduciary Practice Group at Capozzi Adler and will lead the litigation of this action. *Id*. at ¶¶ 46-47. He has been litigating ERISA fiduciary breach lawsuits for 17 years and he and Capozzi Adler currently serve as counsel in over two dozen fiduciary breach actions across the country. *Id*. at ¶¶ 46-47, 50-54. Capozzi Adler was recently appointed interim or co-lead counsel in several actions pending across the country and have defeated numerous motions to dismiss and settled analogous cases across the country. *Id*. at ¶¶ 50, 52-53. Based on the foregoing, Capozzi Adler has the requisite qualifications to lead this litigation. *Third*, Capozzi Adler will commit the necessary resources to represent the class. With three office locations, the firm has been successfully serving clients for close to 25 years offering a full range of legal services. *Id.* at ¶ 55.

Accordingly, appointment of Capozzi Adler as Class Counsel is warranted. *See Boley, et al. v. Universal Health Servs., Inc., et al.*, 2021 WL 859399 (E.D. Pa. Mar. 8, 2021) (appointing Capozzi Adler as co-lead counsel in analogous breach of fiduciary duty action); *Karg*, 2020 WL 3400199, at * 3 (appointing class counsel where "plaintiffs' counsel submitted documentation of their own qualifications and commitment.").

### C. The Class May Be Properly Certified Under Rule 23(b)(1)

#### 1. Certification Under Rule 23(b)(1)(B) is Most Appropriate

Many courts have relied upon Rule 23(b)(1)(B) in certifying classes in analogous cases because it is particularly suited for cases alleging the breach of fiduciary obligations to

- 18 -
PLAINTIFFS' CORRECTED AMENDED UNOPPOSED MOTION FOR CLASS CERTIFICATION AND
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION

plaintiffs. *See, e.g., Cryer*, 2017 WL 4023149, at *6. Indeed, the Advisory Committee Notes to Rule 23 explicitly instruct that certification under Rule 23(b)(1)(B) is appropriate in "an action which charges a breach of trust by an indenture trustee or other fiduciary similarly affecting the members of a large class of security holders or other beneficiaries, and which requires an accounting or like measures to restore the subject of the trust." FED. R. CIV. P. 23(b)(1)(B) Advisory Committee's Note (1966 Amendment). *See, e.g.*, *Mehling v. New York Life Ins. Co. et al.*, 246 F.R.D. 467, 478 (E.D. Pa. 2007) (certifying the class pursuant to Rule 23(B)(1)(B) in an ERISA fiduciary duty case); *Kanawi*, 254 F.R.D. at 111 (same); *Nortel*, 2009 WL 3294827, *14-15 (same); *Shanehchian*, 2011 WL 883659, *9-10 (same); *Shirk*, 2008 WL 4425535, *5 (same); *Sacerdote*, 2018 WL 840364, *6 ("Most ERISA class action cases are certified under Rule 23(b)(1)."); *Clark*, 2018 WL 1801946, *9-10 (same); *see also Northrop Grumman,* 2011 WL 3505264, at *15 (quoting *Gomez v. Rossi Concrete, Inc.*, 270 F.R.D. 579, 593 (S.D. Cal. 2010) ("a 'classic example[]' of adjudications that would be dispositive of the interests of other members not parties to the individual adjudications would be 'actions charging "a breach of trust by an indenture trustee or other fiduciary similarly affecting the members of a large class" of beneficiaries, requiring an accounting or similar procedure "to restore the subject of the trust," Advisory Committee's Notes on Fed. Rule Civ. Proc. 23'").

Here, the Complaint alleges breaches of fiduciary duties under ERISA. Therefore, the only remedy available to participants in the Plan is Plan-wide relief, including the restoration of losses. Thus, the proposed Class meets the requirements of FED. R. CIV. P. 23(b)(1), given the nature of this action and the relief sought on behalf of the Class.[12]

### 2. Certification is Also Appropriate Under Section 23(b)(1)(A)

Rule 23(b)(1)(A) "takes in cases where the party is obligated by law to treat the members of the class alike . . . or where the [defendant] must treat all alike as a matter of practical necessity." *Amchem*, 521 U.S. at 614 (citation omitted). This is precisely such a case

---

[12] *See* Gyandoh Decl., Exhibit 3 (listing decisions certifying Rule 23(b)(1)(B) classes).

because the fiduciary duties imposed by ERISA are "duties with respect to a plan" that protect the "interest of the participants and beneficiaries" collectively. *See* 29 U.S.C. § 1104. In discharging their duties to the Plan, Defendants, as fiduciaries, were obligated to treat all participants (and all class members) alike. However, once a court determines that a class of participants and beneficiaries seeking recovery from an ERISA fiduciary satisfies subsection (b)(1)(B) of Rule 23, it is not necessary to consider the alternative subsections of Rule 23(b). *See, e.g.*, *Koch v. Dwyer*, No. 98-CV-5519, 2001 WL 289972, at *5 n.2 (S.D.N.Y. Mar. 23, 2001) ("Since class certification is proper under Rule 23(b)(1)(B), it need not be determined whether Plaintiff has also satisfied the requirements of Rule 23(b)(1)(A) or 23(b)(2).")

## VI.   CONCLUSION

For the reasons stated above, Plaintiffs respectfully request that this Court certify this action as a class action under FED. R. CIV. P. 23(a) and (b)(1), appoint Plaintiffs Eboni D. Lucas, Jeremy Goard, and Shawndrea Stafford as representatives for the certified Class, and appoint Capozzi Adler as counsel for the certified Class.

Dated: October 14, 2022            **CAPOZZI ADLER, P.C.**

*/s/ Mark K. Gyandoh*
Mark K. Gyandoh
(admitted *Pro Hac Vice*)
312 Old Lancaster Road
Merion Station, PA 19066
Email: markg@capozziadler.com
Phone: (610) 890-0200
Fax: (717) 233-4103


Counsel for Plaintiffs and the Putative Class