**LAW OFFICE OF HAYES & WELSH**
Martin L. Welsh, Esquire
Nevada Attorney I.D. #8720
199 North Arroyo Grand Boulevard
Suite 200
Henderson, NV 89074
mwelsh@lvlaw.com
(702) 509-7310
Fax (702) 434-3739

Counsel for Plaintiffs and the Putative Class

[Additional Counsel Listed on Signature Page]

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| EBONI D. LUCAS, JEREMY GOARD, and SHAWNDREA STAFFORD, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>MGM RESORTS INTERNATIONAL, THE INTERNAL COMPENSATION COMMITTEE OF MGM RESORTS INTERNATIONAL, THE ADMINSTRATIVE COMMITTEE OF MGM RESORTS INTERNATIONAL, and JOHN DOES 1-30.<br><br>Defendants. | CIVIL ACTION NO.: 2:20-cv-01750-JAD-NJK<br><br>**DECLARATION OF MARK K. GYANDOH IN SUPPORT OF PLAINTIFFS' CORRECTED UNOPPOSED AMENDED MOTION FOR CLASS CERTIFICATION** |

I, Mark K. Gyandoh, declare as follows:

1. I am a member in good standing of the bars of the Commonwealth of Pennsylvania and state of New Jersey and have personal knowledge of the facts set forth below and, if called as witness, I could and would testify competently thereto.

2. I am a partner and the Chair of the Fiduciary Practice Group at the law firm of Capozzi Adler, P.C. ("Capozzi Adler"), and I submit this Declaration in support of Plaintiffs' Motion for Class Certification, which seeks certification of the proposed Class, appointment of Plaintiffs as representatives for the proposed Class, and appointment of Capozzi Adler as counsel for the Class.

3. I have been actively involved in all stages of this lawsuit, including investigating and preparing the Complaint and Amended Complaint and working to develop the best strategy to prosecute this case.

*__Investigation of Claims__*

4. Plaintiffs filed a Class Action Complaint on September 23, 2020 (ECF No. 1).

5. Plaintiffs filed an Amended Class Action Complaint[1] on December 4, 2020 (ECF No. 14).

6. The Amended Complaint asserted claims under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq.*, against MGM Resorts International ("MGM") and other alleged fiduciaries of the MGM Resorts 401(k) Savings Plan ("Plan") (collectively, "Defendants"), on behalf of the Plan and a proposed class of participants and beneficiaries of the Plan, for relief to the Plan pursuant to ERISA § 502(a)(2), 29 U.S.C. § 1132(a).

---

[1] All capitalized and undefined terms used herein shall have the same meanings ascribed to them in the Amended Class Action Complaint ("Cmplt.", "Am. Cmplt.", or "¶") (ECF No. 14).

- 2 -

DECLARATION OF MARK K. GYANDOH IN SUPPORT OF
PLAINTIFFS' CORRECTED UNOPPOSED AMENDED MOTION FOR CLASS CERTIFICATION

7. Prior to filing the Complaint, Capozzi Adler engaged in substantial investigation of the potential claims in this Action.

8. Capozzi Adler's attorneys conducted a detailed review and analysis of documents related to the administration of the Plan, including Form 5500s filed with the Department of Labor, as well as publicly-filed documents regarding the fees and investment returns of the Plan's investments and comparable investment alternatives, the compensation paid to the Plan's recordkeepers, and industry publications regarding prudent fiduciary practices, the competitive market for plan services, and other matters as referenced in the Complaint, including the challenged investments in the Plan.

9. The firm's attorneys worked closely with Plaintiffs to obtain Plan-related information addressing their claims and also consulted with a financial expert on the validity of the claims.

10. As part of its investigation, Capozzi Adler requested Plan-related documents from Ardent pursuant to ERISA § 104(b)(4) to further investigate Defendants' potential breaches and, prior to filing suit, counsel closely analyzed the documents received from Defendants via the request pursuant to ERISA § 104(b)(4). *See* Exhibit 1, May 26, 2020 104(b) letter to the Plan Administrator.

11. In summary, Plaintiffs allege the following in the Complaint:

***Statement of Facts***

***The Totality of Circumstances Demonstrate the Plan Fiduciaries Failed to Administer the Plan in a Prudent Manner***

12. Measured by several different benchmarks, it is obvious during the Class Period Defendants breached the duties they owed to the Plan. *Id.* at ¶¶ 74-75, 83-91, 98-108.

       ***The Expense Ratios of Plan Investments Were More Expensive than that of Comparable Investments***

13. One indication of Defendants' fiduciary breaches is that several funds in the Plan were more expensive than comparable funds found in similarly sized plans (conservatively,

plans having over $1 billion in assets). *Id.* at ¶ 64. The expense ratios for funds in the Plan had a difference of ***297%*** (in the case of Eaton Vance Atl Cap SMID A) and a difference of ***253%*** (in the case of MFS Mid Cap Val R3) above the median expense ratios in the same category. ¶ 74. These same discrepancies existed when looking at average expense ratios. *Id.* Despite the excessive costs, Defendants failed to replace the imprudent funds during the Class Period. ¶ 76.

### *Several of the Plan's Funds With Substantial Assets Were Not In the Lowest Fee Share Class Available to the Plan*

14. Another indication of Defendants' fiduciary breach is that several funds in the Plan had identical lower share counterparts that were never selected by the Plan's fiduciaries. *Id.* at ¶ 84 (listing six funds). The lower cost funds were identical in all ways except price and cost up to ***58%*** (in the case of the MFS Mid Cap R6) less than the funds selected and maintained in the Plan by Defendants. *Id.* The alternative funds are identical in every respect except price. *Id.* at ¶ 77. Accordingly, the lower share classes for the six funds had greater net returns than their more expensive counterparts. *Id.* at ¶ 85. Further, the lower cost share classes had higher net returns than their higher-cost counter parts, *id.*, and the higher cost shares performed poorly compared to their peers. *Id.* at ¶ 86. Failure to select these cheaper identical funds cost the Plan $9 million in losses before interest just from 2014 to 2019. *Id.* at ¶¶ 83, 88.

### *The Plan Was Overwhelmingly Biased in Favor of Actively-Managed Funds*

15. A further indication of an imprudent monitoring process is the Defendant-fiduciaries' actions in overwhelmingly favoring actively managed funds when the prevailing circumstances during the Class Period showed, among other things, that in the five years ending June 30, 2019, the majority of U.S. equity funds did not outperform their index counterparts. ¶ 98. Further, 77.97% of large-cap mutual fund managers and 73.21% of institutional accounts underperformed the S&P 500® on a gross-of-fees basis over the 10 year horizon between 2008 and 2018. *Id.* at ¶ 100. For example, in 2017, the majority of equity

managers in 15 out of 17 categories underperformed their respective benchmarks over 10-year horizon, gross-of-fees. *Id.* at ¶ 107. With this backdrop, from 2014 to September 2020, 76.92%-90.91% of the Plan's "designated investment alternatives" were actively managed. *Id.* at ¶ 111. Defendants bias in favor of selecting actively managed funds instead of construing a balanced Plan investment menu – or even one weighted in favor of passively managed funds – reveals a deficient monitoring process. *Id.* at ¶ 112.

### *Defendants Failed to Adequately Monitor the Plan's Recordkeeping Expenses*

16. As of the end of 2018, the Plan had 31,053 Plan participants with account balances. ¶ 41. Another indication of Defendants' breach of their fiduciary duties are the outrageous sums they caused the Plan and participants to pay for recordkeeping and administrative services given the huge number of Plan participants. The Plan's per participant administrative and recordkeeping fees were as follows:

|      | **Total Admin Costs Reported** | **Participants** | **Per Participant Cost** |
| --- | --- | --- | --- |
| 2014 | $1,917,967 | 26,298 | $72.93 |
| 2015 | $1,941,684 | 25,793 | $74.35 |
| 2016 | $2,046,125 | 25,625 | $79.84 |
| 2017 | $2,037,379 | 26,777 | $76.08 |
| 2018 | $2,161,354 | 31,053 | $69.60 |

¶ 120. These amounts were calculated by adding up all the fees on the Form 5500 that were paid to Prudential, the Plan's recordkeeper. ¶ 120, n. 26. This was just a portion of the recordkeeping and administrative fees paid to Prudential with additional payments coming in the form of revenue sharing. This dynamic is best illustrated by looking at the fees paid in 2019 when the gross average per participant recordkeeping and administrative charges was $102.94. ¶ 121.

17. In 2019, the Plan's administrative fees were paid using a fixed percentage fee model (0.0015 or 0.15%) where the percentage was applied to the Plan's assets under

management. This worked out to about $69.85 per participant, which was to be reimbursed in an amount and time at the discretion of MGM. ¶ 124. The Plan also paid an additional $33.09 per participant in direct compensation for recordkeeping services. ¶ 125. These amounts totaled the $102.94 mentioned above.

18. Compared to recognized benchmarks these prices were excessive. One survey conducted by NEPC, a consulting group, found that the majority of plans with over 15,000 participants paid a median price of $40 per participant recordkeeping, trust and custody fees. ¶ 132. *No plan* with more than 15,000 participants paid more than $65-70 per participant for recordkeeping and administrative costs. *Id*. Yet another survey published by the *401k Averages Book* (20th ed. 2020) reveals that a plan with 2,000 participants and $200 million in assets has an average recordkeeping and administration cost (through direct compensation) of $5 per participant. ¶ 133. Thus, the Plan, with over $1.6 billion dollars in assets and over 31,000 participants, should have had direct recordkeeping and administration costs at or below the $5 average, given that costs decrease as plan size increases. *Id*. Defendants' failure to obtain reasonable recordkeeping and administrative rates stems in part from the failure to periodically conduct a Request for Proposal ("RFP"). ¶¶ 117-119.

*Procedural History*

19. After filing the Complaint, copies were served on the IRS and U.S. Dept. of Labor pursuant to ERISA § 502(h). *See* Exhibit 2.

20. Defendants filed a Motion to Dismiss the Amended Class Action Complaint on March 5, 2021 (ECF No. 29).

21. Plaintiffs filed their Memorandum of Points and Authorities In Opposition to Defendants' Motion to Dismiss the Amended Class Action Complaint on April 5, 2021 (ECF No. 32).

22. On April 2, 2021, Defendants filed their Reply Memorandum In Support of Their Motion to Dismiss the Amended Class Action Complaint (ECF No. 36).

23. Defendants filed their Answer and Affirmative Defenses to Plaintiffs' Amended Complaint on March 22, 2022 (ECF No. 72).

*Discovery Efforts*

24. On June 9, 2021, Plaintiffs served their Initial Disclosures Pursuant to Federal Rule of Civil Procedure 26(a)(1) to Defendants.

25. On May 6, 2022, Plaintiffs served their First Set of Interrogatories Directed to All Defendants.

26. On June 25, 2021, Plaintiffs served their First Request for Production of Documents Directed to All Defendants.

27. On August 6, 2021, Plaintiffs served their Amended First Request for Production of Documents Directed to All Defendants.

28. On August 18, 2021, Plaintiffs served their Second Amended First Request for Production of Documents Directed to All Defendants. Defendants served responses to Plaintiffs' requests on May 12, 2022.

29. On May 4, 2022, Defendants served their First Set of Interrogatories and First Set of Requests for Production of Documents to all Plaintiffs.

30. Defendants have produced well over 100,000 pages of documents, much of which are copies of documents Defendants obtained through their subpoena to Empower.

31. The Parties are in the process of scheduling depositions.

32. Documents obtained in discovery so far provide detail on the Plan's operations.

33. MGM is the Plan sponsor and a named fiduciary of the Plan. The MGM Resorts 401(k) Savings Plan Summary Plan Description dated 6/2014 (SPD) at 29 (MGM002351).

34. As a "defined contribution" retirement plan, the Plan "provides eligible employees with the ability to accumulate long-term retirement savings through contributions to individual participant accounts." MGM Resorts 401(k) Savings Plan Investment Policy Statement at 1 (MGM001202).

35. Although Plan participants and beneficiaries decide how their Plan accounts are invested and "can choose to invest in any of the various options offered through the Plan, subject to certain restrictions," *See* SPD at 11 (MGM002333), it is the Plan's fiduciaries' responsibility to prudently select and monitor the investment options provided on the menu of investment options.

36. MGM, as the Plan sponsor has appointed the Administrative Committee as the Plan Administrator. *See* SPD at 29 (MGM002351). More specifically, prior to December 1, 2014, the Compensation Committee of the MGM Board held administrative duties over the Plan. As of December 1, 2014, the Compensation Committee of the MGM Board delegated to the Company's Internal Compensation Committee its administrative duties over the Plan. Such duties included the authority to appoint and reappoint the members of the Administrative Committee.

37. The primary responsibilities of the Administrative Committee include to "[a]pprove and maintain [the] IPS"; "[p]rovide sufficient asset classes with different and distinct risk/return profiles"; "[s]elect and monitor the investment options under the Plan"; "[s]elect and monitor the QDIA"; "[r]eview investment related expenses associated with the Plan"; "[m]onitor and, if necessary, hire or terminate the Investment Consultant, any investment managers and service vendors"; and "[f]rom time to time, retain lawyers, consultants, actuaries and other experts (sic) to advise it with respect to the discharge of the foregoing obligations." *See* IPS at 3 (MGM001204).

38. The Administrative Committee members are "fiduciaries" of the Plan and have a duty to operate the Plan "prudently and in the interest of you and other Plan Participants and beneficiaries." *See* SPD at 27 (MGM002349).

39. Although not a Defendant in this action, the Plan's recordkeeper has a role in this litigation.

40. During the Class Period, Prudential Investment Management Services, LLC ("Prudential") provided and continues to provide recordkeeping and administrative services to

the Plan. *See* March 2015 Notice (EMP0000198); Prudential Estimated Revenue Available for Recordkeeping Expenses as of 12/31/2018 (EMP0062515-EMP0062517); Prudential Estimated Revenue Available for Recordkeeping Expenses as of 09/30/2019 (EMP0062527-EMP0062529); Prudential Estimated Revenue Available for Recordkeeping Expenses as of 03/31/2020 (EMP0062521-EMP0062523); Prudential Estimated Revenue Available for Recordkeeping Expenses as of 03/31/2021 (EMP0062533-EMP0062535). On April 4, 2022, Prudential announced "the completion of the sale of its full-service retirement business to Empower." *See https://news.prudential .com/prudential-financial-completes-sale-to-empower-full-service-retirement-business.htm*

41. The Plan's recordkeeper is responsible for, among other things, maintaining participant records, administrating participant directions, reporting to the Plan sponsor, reporting to participants, allocating contributions, administering loans, and preparing the required regulatory documents.

42. The Plan's assets under management for all funds as of December 31, 2020 was $1,897,990,973. *See* The MGM Resorts 401(k) Savings Plan, Financial Statements and Supplemental Schedules, Year Ended December 31, 2020.

43. The prudent selection and monitoring of the investment options by the Committee is crucial to fulfill the purpose of the Plan, which is, among other things, to enable "eligible employees to accumulate and invest savings on a tax-advantaged basis in order to provide additional income and security upon retirement." *See* SPD at 1 (MGM002323).

44. During the Class Period, the number of participants in the Plan ranged from over 25,000 to over 31,000. *See* 2014 through 2020 Form 5500s.

45. As of December 31, 2020, there were 26,628 participants with account balances in the Plan. *See* 2020 Form 5500s.

***Experience of Class Counsel***

46. I received both my J.D. (2001) and LLM in trial advocacy (2011) from Temple University School of Law. While at Temple, I was the research editor for the Temple

International and Comparative Law Journal. After law school I clerked for a year with a Judge on the New Jersey State Appellate Court.

47. I have been litigating ERISA fiduciary breach lawsuits for 17 years, first at my prior firm of Kessler Topaz Meltzer & Check, LLP (KTMC), and currently at Capozzi Adler where, as noted above, I am chair of the Fiduciary Practice Group. Over my career I have been actively involved in many high profile ERISA class actions. For example, I was one of the lead attorneys for plaintiffs in *Fifth Third Bancorp, et al., v. Dudenhoeffer, et al.*, 573 U.S. 409, 134 S. Ct. 2459 (2014), a seminal Supreme Court decision that clarified the unwavering duties owed by fiduciaries to pension plan participants. *See* biography at https://capozziadler.com/mark-k-gyandoh-esquire/.

48. My partner Donald Reavey who chairs the firm's Litigation Practice Group is an experienced litigator frequently handling multi-million dollar disputes. A 1998 graduate of Penn State, Dickinson School of Law, Mr. Reavey has leaned on his two-decade plus litigation experience in filing and litigating dozens of ERISA breach of fiduciary duty actions over the last several years. *See* biography at https://capozziadler.com/donald-r-reavey-esquire/.

49. Other members of the Fiduciary Practice Group include Mid-Level Associate, Gabrielle P. Kelerchian, a 2017 graduate of Villanova Law School with several years of litigation experience. *See* biography at https://capozziadler.com/gabrielle-p-kelerchian-esquire/. Before joining Capozzi Adler, Ms. Kelerchian zealously represented individuals in medical malpractice and personal injury cases at Philadelphia area law firms. Rounding out the ERISA team are our support staff which include paralegals and other paraprofessionals who assist in the practice.

50. I and my firm have been lead or co-lead interim counsel in dozens of ERISA breach of fiduciary duty actions. Recently, Capozzi Alder was appointed interim co-lead class counsel in *Tracy et al. v. The American National Red Cross*, No. 1:21-cv-00541-EGS (D.D.C. Apr. 16, 2021) an ERISA class action analogous to the instant Action. Capozzi Adler was also appointed co-lead class counsel in *Boley, et al. V. Universal Health Services, Inc., et al.* 2021 WL

859399 (E.D.Pa. Mar. 8, 2021). Additionally, Capozzi has been appointed interim lead or co-lead class counsel in several analogous ERISA breach of fiduciary duty matters. *See, e.g., Bilello, et al., v. Estee Lauder, Inc., et al.*, No. 1:20-cv-04770-JMF (S.D.N.Y. Aug. 10, 2020) (Doc. 11.) (appointing Capozzi Adler interim lead class counsel); *Covington et al. v. Biogen Inc. et al.*, No. 1:20-cv-11325 (D. Mass. Oct. 6, 2020 (Doc. 24) (appointing Capozzi Adler interim Co-Lead Class Counsel); *Tepper et al. v. Omnicom Group et al.*, No. 20-cv-4141 (S.D.N.Y. Sept. 17, 2020) (Doc. 13) (same); *Johnson et al. v. Quest Diagnostics et al.*, No. 2:20cv07936 (D.N.J. Oct. 2, 2020) (Doc. 7) (same).

51. Of particular importance here, while I was counsel at KTMC and in my current position, in the course of prosecuting ERISA class actions such as this, I have supervised the preparation of numerous consolidated pleadings, responses to motions to dismiss, drafting of discovery requests and review of hundreds of thousands of pages of plan-related documents and related documentation, and litigated cases through the summary judgment and trial phases.

52. The firm strives to obtain the best results for class members in every circumstance. We have successfully defeated motions to dismiss similar allegations in numerous actions. *See, e.g., Kendall et al v. Pharmaceutical Product Development, LLC*, No. 7:20-cv-00071-D (ECF No. 28) (E.D.N.C. March 31, 2021) (upholding allegations that plan fiduciaries selected higher-priced identical share classes and overpaid for recordkeeping); *Davis v. Magna Int'l of America, Inc.*, 2021 WL 1212579 (E.D. Mich. March 31, 2021) (same); *Jones v. Coca-Cola Consolidated, Inc.*, No. 3:20-cv-00654-FDW-DSC (ECF No. 25) (W.D.N.C. March 31, 2021) (same); *McCool v. AHS Management Company, Inc.*, 2021 WL 826756 (M.D. Tenn. March 4, 2021) (same); *Parmer, et al. v. Land O'Lakes, Inc., et al.*, 2021 WL 464382 (D. Minn. Feb 9, 2021) (same); *In re Medstar ERISA Litig.*, 2021 WL 391701 (D. Md. Feb. 4, 2021) (same); *Silva v. Evonik Corp.* slip op. (D.N.J. Dec. 30, 2020) (same); *Pinnell, et al. v. Teva Pharmaceuticals USA, Inc., et al.*, 2020 WL 1531870 (E.D.Pa. Mar. 31, 2020).

53. We have also been successful at the appellate level resulting in the reversal and remand of wrongly dismissed actions. *See, e.g., Kong et al. v. Trader Joe's Co.,* No. 20-56415 (9th Cir. Apr. 15, 2022); *Davis et al. v. Salesforce.com. Inc. et al.*, No. 21-15867 (9th Cur. Apr. 8, 2022). And we have been successful in obtaining affirmances of rightly decided decisions. *See, e.g., Hawkins et al. v. Cintas Corp.*, 32 F. 4th 625 (6th Cir. 2022) (affirming denial of motion to compel arbitration in ERISA case): *Boley v. Universal Health Services, Inc.*, --- F.4th ---, 2022 WL 1768984, at * 1 (3d Cir. June 1, 2022) (upholding decision certifying Rule 23(b)(1) class in ERISA action).

54. My firm has also engaged in successful settlement negotiations and mediations in ERISA actions, recovering millions of dollars for its clients and class members. *See, e.g., Buescher, et al., v. Brenntag North America, Inc., et al.*, No. 5:20-cv-00147 (E.D. Pa. 2020) (recovered $2,300,000.00 class settlement); *Pinnell, et al., v. Teva Pharmaceuticals USA, Inc., et al.*, No. 2:19-cv-05738-MAK (E.D. Pa. 2019) (settlement in the amount of $2,550,000.00 after successful mediation); *Freck v. Cerner Corp., et al.*, No. 4:20-CV-00043-BCW (W.D. Mo. 2020) (recovered $4,050,000.00 class settlement); *Gerken, et al. v. ManTech Int'l Corp, et al.*, No. 1:20-cv-01536 (E.D. Va. 2020) (recovered $1,200,000.00 class settlement).

55. Capozzi Adler also has the resources and commitment to deploy those resources on behalf of the proposed class. With three office locations, the firm has been successfully serving clients for over 25 years offering a full range of legal services.

***Authority Supporting Appropriateness of Class Certification***

56. Having litigated almost exclusively ERISA breach of fiduciary duty actions over my career it is my experience that the types of claims asserted in this action are typically certified.

57. Attached hereto as Exhibit 3 is a non-exhaustive list of more than seventy-four (74) decisions from around the country in which courts certified classes in ERISA breach of fiduciary duty actions, like the instant action, including at least twenty-five (25) decisions certifying classes in "excessive fee" suits.

*Plaintiffs Are Adequate Class Representatives*

58. Each of the Named Plaintiffs in this action is committed to carrying out their duties as Class Representatives.

59. Attached here as Exhibit 4 is the Declaration of Eboni D. Lucas In Support of Plaintiffs' Motion for Class Certification.

60. Attached here as Exhibit 5 is the Declaration of Jeremy Goard In Support of Plaintiffs' Motion for Class Certification.

61. Attached here as Exhibit 6 is the Declaration of Shawndrea Stafford In Support of Plaintiffs' Motion for Class Certification.

I declare, pursuant to 28 U.S.C. § 1746 and under penalty of perjury, that the foregoing is true and correct to the best of my knowledge, information and belief.

Executed this 14th day of October 2022, at Merion Station, Pennsylvania.

/s/ Mark K. Gyandoh
Mark K. Gyandoh
CAPOZZI ADLER, P.C.